FILED

2012 Mar-05  AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **WACHOVIA BANK, NATIONAL ASSOCIATION,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-09-S-1273-NE** |
| | ) | |
| **CHERYL BASWELL-GUTHRIE,** | ) | |
| ***et al.***, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wachovia Bank, National Association, commenced this diversity action sounding in breach of contract against defendants Roy F. Claytor, Jr., and Scott J. McDermott on June 24, 2009.[1] Plaintiff filed an amended complaint on January 14, 2010, naming Colinwood Development Group, L.L.C., Cheryl Baswell-Guthrie, and LAG, L.L.C. as additional defendants.[2] On July 9, 2010, Roy Claytor, Scott McDermott, and Colinwood Development Group were dismissed from the action, leaving only Cheryl Baswell-Guthrie and LAG, L.L.C., as the sole defendants.[3] Plaintiff moved for summary judgment on all remaining claims.[4] Upon consideration

---

[1] *See* doc. no. 1 (Complaint).

[2] *See* doc. no. 16 (Amended Complaint).

[3] Doc. no. 33 (Order Dismissing Fewer Than All Defendants).

[4] Doc. no. 42.

of the motion, briefs, and evidentiary submissions, the court concludes the motion is due to be denied.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[5]  In other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A genuine issue of material fact 'exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party.'"  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (quoting *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284-85 (11th Cir. 1997)).

"In making this determination, the court must review all evidence and make all

---

[5] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921); s*ee also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").

## II.  BACKGROUND

### A.    The Underlying Real Estate Transaction

Roy Claytor and Scott McDermott are members of Colinwood Development Group, a limited liability company.[6]  Claytor and McDermott executed a promissory

---

[6] Doc. no. 17 (Answer to Amended Complaint), Counterclaim ¶ 3.  Many of the documents in the record refer to the company as "Collinwood," but the court will use the term "Colinwood," because that is the spelling the company itself uses in its answer.

3

note in favor of Wachovia on March 4, 2005, evidencing their obligation to repay a loan from Wachovia.[7]  The principal amount of the note was $160,000, and it was to be repaid in full by March 4 of the following year.[8]  Claytor and McDermott defaulted on their obligations under the note, however.[9]  Wachovia accelerated the note, demanded payment, and eventually commenced this action.[10]  In addition to the personal obligations of Claytor and McDermott, Wachovia also held a note executed by Colinwood Development Group on May 9, 2006.[11]  That note was for the principal amount of $2,880,000, and was to be paid in full by August 9, 2011.[12]  It was executed in conjunction with a mortgage on an office building located in Huntsville, Alabama, and owned by Colinwood Development Group.[13]  As of December 3, 2008, however,

---

[7] *See* doc. no. 42 (Motion for Summary Judgment), at Ex. 1 (Declaration of John Cathey), at Ex. A (Promissory Note of March 4, 2005).  That promissory note was executed concurrently with a mortgage on the property.  Doc. no. 46-3 (Mortgage of March 4, 2005), at 3.  Because defendants have filed multiple documents within several of their exhibits, the court will refer to the ECF filing numbers, rather than the page numbers printed on the original documents.  Additionally, it should be noted that a page of the mortgage is missing.

[8] Promissory Note of March 4, 2005.

[9] *See* Declaration of John Cathey ¶ 7.  Under the terms of the note, the default must have occurred at some point between March of 2005 and March of 2006, but the parties have provided no information regarding the timing of the default.

[10] *Id.* ¶ 8; *see also* doc. no. 1.

[11] Doc. no. 46-7 (Promissory Note of May 9, 2006), at 6.

[12] *Id.* at 14.

[13] *See id.* ("Borrower shall use the proceeds of the loan(s) evidenced by this Note for the commercial purposes of Borrower, as follows:  purchases Deltacom building . . . .").  The record contains several documents referring to the building, which is at the center of events leading to this litigation.  Among the exhibits presented by defendants alone, there are two different names for the building, two different addresses, and two different legal descriptions of the property.  Yet neither

Colinwood Development Group also was in default of its obligations under that note.[14]

In January of 2009, Colinwood Development Group sold the office building that was the security for Wachovia's mortgage to LAG: a limited liability company of which Cheryl Baswell-Guthrie is a member.[15] On January 27, 2009, Colinwood Development Group and LAG executed closing documents related to the sale of the office building.[16] Part of the sale price was to be used to fulfill the obligations of Colinwood Development Group, Roy Claytor, and Scott McDermott under the Wachovia mortgages, lifting the encumbrance on the title to the property.[17] The sale price was not alone going to be sufficient to pay off all of those obligations, however. Therefore, in order to ensure that the encumbrances would be released, Baswell-Guthrie agreed to make a loan to the Colinwood Development Group, Claytor, and McDermott, and to hold a promissory note in the amount of $387,248.73.[18] Additionally, as part of the transaction, Colinwood Development Group was to

---

party disputes that all of the documents refer to the same building.

[14] *See* doc. no. 46-7 (Notice of Default), at 3.

[15] Doc. no. 46-1 (Affidavit of Cheryl Baswell-Guthrie), at 1. The paragraphs comprising the affidavit are not numbered, so the court will cite to page numbers instead. Defendants' brief frequently refers to Baswell-Guthrie in circumstances where the record refers to LAG, as if there is no distinction between Baswell-Guthrie, personally, and the limited liability company of which she is a member.

[16] Affidavit of Cheryl Baswell-Guthrie, at 1.

[17] *See id.* at Ex. 1 (Mortgage Release Letter).

[18] Doc. no. 46-5 (Settlement Statement), at line 208. *See also* doc. no. 46-6 (Email Exchange of Gary Wolfe and Sandy Dollar). That note, if it was ever executed, is not in the record.

transfer $164,563.32 in cash to LAG.[19]   Baswell-Guthrie was under the impression that the aggregate amount of the sale price and loan were sufficient to cover all outstanding obligations of Colinwood Development Group, Claytor, and McDermott and to release all encumbrances on the property.[20]

## B.   Problems with the Transaction

On January 27, 2009, while Colinwood Development Group and LAG were in the process of closing on the sale of the office building, officers at Wachovia were trying to determine whether the failure of Colinwood Development Group, Claytor, and McDermott to satisfy their loan obligations would prevent closing from occurring. That morning, Wachovia vice president Kevin Cutler sent an email to his colleagues Nancy Dollar and Charles "CB" Cook entitled "Will call [yo]u by end of day on fca . . . I will support CBs efforts here on collinwood [sic] . . . keep me posted."[21]   The body of the email said, "CB.  Please share what you are thinking here[.]  I asked nancy to waive late fees[.]   Call me if you have other ideas reductions[.]"[22]   In response, Cook stated, "I am calling Steve Coates and talking to Connie Chepunny about who

---

[19] Settlement Statement, at line 303.

[20] *See* Affidavit of Cheryl Baswell-Guthrie, at 1.

[21] Doc. no. 46-4 (Email Exchange of Kevin Cutler and Charles Cook) (bracketed alterations supplied, ellipses original).

[22] *Id.* (bracketed alterations supplied).

we need to talk to in Wealth to convince them this is an issue we need to solve."[23]

Cutler replied, saying "I agree[.]  They need to look elsewhere to get secured[.]  Does

not need to impede closing[.]"[24]  At approximately the same time, Gary Wolfe, one

of the closing attorneys, sent an email to Dollar stating that "there is no money going

to Collinwood and no additional funds to pay the Breakage fee.  (In fact, the buyer is

lending the seller [$]387,000.00 to fund the payoff as it is.)  Let's discuss how we can

resolve this."[25]

    The record also contains a series of emails from the afternoon of January 27.

The first email, titled "Collinwood Development," is from a Wachovia employee

named Mike Gorman.  The message, sent to Cook and Dollar, reads, "[a]ny updates

on this payoff?  I have not heard from anybody about it today, so I guess they're [*sic*]

refinance with Superior Bank did not close yesterday."[26]  Dollar responded, saying,

> [i]t did not close yesterday but we would still like to close today.  I have
> spoken with the attorney who is suppose[d] to close the loan and he said
> they are short the amount needed to pay us off.  I have asked for a copy
> of the settlement statement to see if there is something we can work out

---

[23] *Id.*  Presumably, "Wealth" is a division within Wachovia.

[24] *Id.* (bracketed alterations supplied).

[25] Doc. no. 46-6 (Email Exchange of Gary Wolfe and Sandy Dollar) (bracketed alteration supplied).  Although that message was sent to a "Sandy" Dollar, rather than Nancy Dollar, Wachovia does not dispute that Dollar received the message.  *See* doc. no. 46, at 4; doc. no. 47, at 2 ("Admitted to the extent the email cited speaks for itself.").

[26] Doc. no. 46-8 (Email Exchange of Mike Gorman and Nancy Dollar) (bracketed alteration supplied).

and I have not received it yet.[27]

Gorman's reply simply thanked Dollar for the update.[28]

Finally, there is one email from Cook to Dan Boswell, one of the closing attorneys, showing that Boswell reached an agreement with Wachovia that the $164,563.32 that Colinwood Development Group, Claytor, and McDermott were to pay to Baswell-Guthrie would instead be returned to Wachovia to satisfy the outstanding obligations of Colinwood, Claytor, and McDermott to the bank.[29] Boswell made this agreement without the knowledge or consent of Baswell-Guthrie. Baswell-Guthrie never received those funds.[30]

## C.   The Promissory Note Signed by Defendants

After executing the documents to memorialize the closing on the sale of the property, Baswell-Guthrie and McDermott went to Wachovia to ensure that the promissory note had been satisfied, and the mortgage released.[31]   Nancy Dollar told them that the obligations were not satisfied and that the mortgage would not be

---

[27] Doc. no. 46-9 (Email Exchange of Mike Gorman and Nancy Dollar) (bracketed alterations supplied).  Dollar's statement in that message suggests that Dollar did indeed receive the email from Wolfe.

[28] *Id.*

[29] Doc. no. 46-11 (Email Exchange of Charles Cook and Dan Boswell).

[30] Affidavit of Cheryl Baswell-Guthrie, at 2.

[31] *Id.* at 1-2.  The description of the trip to the bank provided in the affidavit is not straightforward, but defendants' brief presents a clearer explanation.  *See* doc. no. 46, at 6.  Both the affidavit and the brief suggest that it occurred on the afternoon of January 27, but the resulting promissory note is dated January 28.  The parties have made no attempt to explain this discrepancy.

released.[32]  Dollar stated that Wachovia would release all liens and encumbrances on the office building property only if Baswell-Guthrie, LAG, Colinwood Development Group, Claytor, and McDermott jointly executed a promissory note in favor of Wachovia in the amount of $166,563.32.[33]

Baswell-Guthrie balked at idea of being obligated for debts incurred by Colinwood Development Group, Claytor, and McDermott.[34]  She initially refused to execute the note.[35]  However, Dollar indicated that the proceeds of the loan evidenced by the promissory note would be used to pay the $164,563.32 owed to LAG under the terms of the closing agreement.[36]  Baswell-Guthrie and LAG executed the promissory note for that reason.[37]  Dollar also indicated that the bank would collateralize the note by placing a mortgage on a condominium in Broward County, Florida, owned by McDermott and Claytor.[38]  Dollar stated that Wachovia already had a mortgage on the Florida property, that there were no other mortgages on the property, that the property had equity in excess of $500,000, and that it was appraised at $1.4 million.[39]  Dollar

---

[32] *See* Affidavit of Cheryl Baswell-Guthrie, at 1-2.

[33] *Id.*

[34] *Id.* at 2.

[35] *Id.*

[36] *Id.* at 3.  The affidavit says that "Wachovia" told Baswell-Guthrie those things, but defendants' brief specifies that it was Dollar communicating with them on behalf of Wachovia.

[37] *Id.*

[38] Affidavit of Cheryl Baswell-Guthrie, at 2.

[39] *Id.*

told Baswell-Guthrie that Wachovia would foreclose on the mortgage collateralizing the promissory note should Colinwood Development Group, Claytor, or McDermott default on their obligations under the note.[40]  Dollar further stated that the bank would record that mortgage, giving Guthrie an interest in the Florida property should Wachovia foreclose on it to satisfy the note.[41]  In her affidavit, Baswell-Guthrie stated that those representations were "very critical to inducing" defendants to execute the promissory note.[42]  Wachovia never recorded the mortgage on the Florida property.[43]  After the transaction was complete, Baswell-Guthrie learned that there were actually three mortgages on the Florida property totaling over $1.4 million, that Wachovia held all three mortgages, and that the property was appraised at $776,000 in 2009.[44]

Baswell-Guthrie, LAG, Colinwood Development Group, Claytor, and McDermott executed the note, which stated that it evidenced a loan for $166,563.32.[45]  The proceeds of the loan were to be used for the purpose of "debt consolidation of amounts owed by Colinwood Development Group, Inc., to [Wachovia] and

---

[40] Affidavit of Cheryl Baswell-Guthrie, at 2-3.

[41] *See id.* at 3.

[42] *Id.* at 2.

[43] *Id.* at 3.

[44] *Id.  See also* doc. no. 46-16 (Affidavit of Nick B. Kanelidis) (documenting the various encumbrances on the Florida property).

[45] Declaration of John Cathey, at Ex. B (Promissory Note of January 28, 2009), at 1.

guaranteed by Roy F. Claytor, Jr., and Scott McDermott."[46]   Under the terms of the note, Baswell-Guthrie, LAG, Colinwood Development Group, Claytor, and McDermott were to make monthly payments until the loan was paid off, which was scheduled to occur on January 20, 2010.[47]   The note stated that McDermott and Claytor would grant Wachovia a security interest in the Florida property under a contemporaneous mortgage.[48]

Wachovia commenced this action to enforce the terms of the promissory note executed in 2005 by Claytor and McDermott.[49]   It amended its complaint to include Baswell-Guthrie and LAG as defendants, claiming that all five defendants had defaulted on the 2009 promissory note.[50]   Wachovia reached a settlement with Colinwood Development Group, Claytor, and McDermott.[51]   Those defendants paid $190,000 to Wachovia and were dismissed from the case.[52]   According to the terms of the promissory note, Wachovia applied $142,871.98 of the settlement funds to satisfy the obligations of Claytor and McDermott under the 2005 note, $44,384.61 to

---

[46] *Id.* (bracketed alteration supplied).

[47] *Id.* at 2.

[48] *Id.* at 1.

[49] *See* doc. no. 1.

[50] *See* doc. no. 16.

[51] Declaration of John Cathey ¶ 16.

[52] *Id.*; doc. no. 33.

attorneys' fees, and the remaining $2,743.41 to the amount owed on the 2009 note.[53]
Wachovia maintains that Baswell-Guthrie and LAG owe $184,752.83 on the
promissory note.[54]   Baswell-Guthrie and LAG argue that they have no obligation
under the note, because it was fraudulently induced, and there was no consideration
for the note.[55]   They do not claim to have made payments under the terms of the note.

## III.  DISCUSSION

Wachovia maintains that this action is a simple proceeding to enforce the terms
of a promissory note.   It has produced the note itself, as well as evidence of
defendants' failure to meet their obligations under the note.   Were that the only
evidence in the record, summary judgment would unquestionably be appropriate.   *See*
Ala. Code § 7-3-106; *Government Street Lumber Co., Inc. v. AmSouth Bank, N.A.*, 553
So. 2d 68, 79 (Ala. 1989) (collecting cases).   However, defendants argue that the
record contains evidence supporting three defenses to plaintiff's breach of contract
claim.   If the evidence, viewed in the light most favorable to defendants, the non-
moving parties, is sufficient to maintain any of those defenses, summary judgment is
not appropriate.

---

[53] Declaration of John Cathey ¶ 18.

[54] Doc. no. 42-1 (Brief in Support of Summary Judgment), at 11.

[55] Doc. no. 46 (Brief in Opposition to Summary Judgment), at 10-12.

A.    **Lack of Consideration**

Consideration is one of the essential elements to contract formation.  *See, e.g.*, *Smith v. Wachovia Bank, N.A.*, 33 So.3d 1191, 1197-98 (Ala. 2009) (citing *Restatement (2d) of Contracts* §§ 17, 71).  Without consideration, no contract exists and, thus, no action for breach of contract lies.  *See id.* ("[C]onsideration is an essential element of, and is necessary to the enforceability or validity of, a contract.") (citation omitted, bracketed alteration supplied).  Defendants state that "Wachovia was to pay over to Guthrie $164,563.42 at the loan closing."[56]   Baswell-Guthrie never received those funds, because those funds were wired to the closing attorneys, who then wired them back to Wachovia.[57]  Thus, defendants argue that they received no consideration for signing the promissory note, because the receipt of those funds was the benefit they were to receive in exchange for signing.

The existence of a duly executed promissory note, however, is *prima facie* evidence under Alabama law that there was sufficient consideration to form a contract. *Seier v. Peck*, 456 So.2d 1079, 1081 (Ala. 1984) ("The note itself is '*prima facie* evidence of sufficient consideration for the execution thereof, and the burden of proof is on the defendant to show there was no consideration.'") (quoting *Day v. Ray E.*

---

[56] Doc. no. 46, at 11.

[57] *See* Affidavit of Cheryl Baswell-Guthrie, at 3.

*Friedman & Co.*, 395 So.2d 54, 56 (Ala. 1981)).  Here, the promissory note states the consideration provided to each party:  in return for an immediate loan of $166,563.32, Baswell-Guthrie, LAG, Colinwood Development Group, Claytor, and McDermott promised to repay Wachovia that amount, plus interest, at a later date.[58]  Defendants' arguments that they executed the note in expectation of receiving different consideration, not evidenced in the note, run afoul of the parol evidence rule. Alabama "courts have often stated the rule that a note payable at a specified date and making no provision for extension or renewal may not be varied or contradicted by parol evidence of a prior or contemporaneous oral agreement of different terms or conditions."  *Bengston v. SouthTrust Bank*, 500 So.2d 1111, 1113 (Ala. 1986) (citation omitted).  By arguing that their execution of the promissory note was premised on additional consideration not memorialized in the note, defendants are trying to do just that.

Even if this court were to ignore the parol evidence issue, defendants' arguments still would not prevail.  As Wachovia points out, the payment of $164,563.42 to Baswell-Guthrie was one of the terms of the closing agreement between Colinwood Development Group, Claytor, and McDermott and Baswell-

---

[58] Promissory Note of January 28, 2009, at 1.

Guthrie and LAG.[59]   Wachovia was not a party to that transaction.[60]   Moreover,

despite the facts that Wachovia held the funds in question before the transaction and

initially wired those funds to the closing attorneys, and that Baswell-Guthrie was

induced to sign the promissory note because she expected to receive those funds,

payment of those funds to Baswell-Guthrie was not the *only* underlying consideration

of the promissory note.  Instead, as the evidence submitted by defendants make clear,

the consideration they received in exchange for the execution of the promissory note

included the release of all encumbrances on the office building property.[61]  In fact, the

reason that Baswell-Guthrie went to the Wachovia office in the first place was to

ensure that those encumbrances would be lifed.[62]

Although Baswell-Guthrie may have also expected to receive the funds due to

her under the related property sale contract with Colinwood Development Group,

Claytor, and McDermott, and she may have been under the impression that she would

receive those funds in exchange for signing the note, those expectations do not negate

the consideration she *did* receive.  Defendants' argument essentially boils down to the

*inadequacy* of the consideration they received.  It is axiomatic that courts do not

---

[59] Doc. no. 47, at 9 (citing Settlement Statement, at line 303).

[60] *See id.*

[61] *See* Affidavit of Cheryl Baswell-Guthrie, at 1-2.

[62] *See id.  See also* doc. no. 46, at 6.

inquire into the adequacy of consideration.  *See Seier*, 456 So.2d at 1082. ("The mere inadequacy of consideration alone 'is never sufficient to vitiate a contract or conveyance otherwise valid . . . .'") (quoting *Marcrum v. Embry*, 282 So.2d 49, 54 (Ala. 1973)).   Regardless of the risk defendants may have taken in signing the promissory note in comparison to the benefit they received, they did receive consideration for doing so.   Thus, defendants' consideration defense is without merit.[63]

## B.    Fraudulent Suppression

Defendants also assert two fraud defenses:   fraudulent suppression, and fraudulent misrepresentation.   Suppression is one of several theories of fraud cognizable under Alabama law.   "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud.  The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."  Ala. Code. § 6-5-102.  Alabama courts have established four elements of a suppression claim:  (1) the party charged with suppression had a duty to disclose material facts; (2) that party concealed or failed to disclose those facts; (3) that party's concealment or failure to disclose induced another party to act; and (4) the act of suppressing facts resulted in harm to the party induced to act. *Flying*

---

[63] Notably, defendants have not counterclaimed for the $164,563.32.

*J Fish Farm v. People's Bank of Greensboro*, 12 So.3d 1185, 1192 (Ala. 2008) (citing

*Interstate Truck Leasing, Inc. v. Bender*, 608 So.2d 716, 719 (Ala. 1992)).  "A duty

to communicate can arise from a confidential relationship between the plaintiff and

the defendant, from the particular circumstances of the case, or from a request for

information, but mere silence in the absence of a duty to disclose is not fraudulent."

*Id.* (collecting cases).  Whether a duty to disclose exists is a matter of law, and if the

court determines that no duty exists, summary judgment is appropriate.  *Id.* (citing

*State Farm Fire & Casualty Co. v. Owen*, 729 So.2d 834, 840 (Ala. 1998)).

The central issue in defendants' suppression argument is the question of

whether Wachovia owed defendants a duty to disclose information.  Clearly, there was

no confidential relationship between Wachovia and defendants.  "Courts have

traditionally viewed the relationship between a bank and its customer as a

creditor-debtor relationship that does not impose a fiduciary duty on the bank."  *Id.*

at 1190-91 (quoting *K&C Development Corp. v. AmSouth Bank*, 597 So.2d 671, 675

(Ala. 1992)).  Even so, a customer's reliance on a bank for financial advice or "other

special circumstances" may cause a duty to arise.  *Id.*  Nevertheless, the evidence in

the record does not support either of those alternate methods of establishing a duty.

Instead, the evidence shows that the parties were involved in negotiations to release

the mortgage lien that Wachovia held on a property defendants were in the process of

17

buying from a third party.  Although defendants agreed to sign the promissory note — a solution proposed by Wachovia — there is no evidence that defendants sought financial *advice* from the bank.  Nothing in the record suggests the existence of any special circumstances that would have created a duty to disclose.  Thus, the first element of the suppression defense is not satisfied, and that defense also fails.

## C.   Fraudulent Misrepresentation

Finally, defendants raise the defense of fraudulent misrepresentation.  There are four elements of such a claim:  (1) a party must make a false representation; (2) that false representation must pertain to a material fact; (3) another party must reasonably rely on the false representation; and (4) the relying party must suffer damage as a proximate consequence of the false representation.  *See, e.g.*, *Sexton v. Bass Comfort Control, Inc.*, 63 So.3d 656, 662 (Ala. Civ. App. 2010) (citing *Padgett v. Hughes*, 535 So.2d 140, 142 (Ala. 1988)).  Defendants argue that "Wachovia's representation that the promissory note would be sufficiently collateralized by a mortgage on the Florida property was a fraudulent misrepresentation that Guthrie relied upon as a material fact in the decision to execute the promissory note to her detriment."[64]  They argue that if Baswell-Guthrie had known that Wachovia had no intention to record the mortgage,

---

[64] Doc. no. 46, at 10-11.

she would not have signed the promissory note.[65]

Wachovia seizes on the inclusion of the words "would be sufficiently collateralized" in defendants' brief to argue that defendants are asserting the defense of promissory fraud.[66]  Promissory fraud is fraud arising from a party's promise to act or not to act in a certain manner in the future.  *See, e.g.*, *id.* at 661.  In addition to the standard elements of fraud, a party alleging promissory fraud must also show that the promising party had the intention not to fulfill the promise at the time of misrepresentation, and that the promising party had the intention to deceive.  *Waddell & Reid, Inc. v. United Investors Life Insurance Co.*, 875 So.2d 1143, 1160 (Ala. 2003) (quoting *Padgett*, 535 So.2d at 142).  The party alleging promissory fraud bears the burden of producing "substantial evidence" of fraudulent intent at the time of the promise.  *Southland Bank v. A&A Drywall Supply Co., Inc.*, 21 So.3d 1196, 1212 (Ala. 2008) (citations omitted).  Wachovia argues that defendants cannot meet that burden, because there is no evidence that Wachovia intended not to record the mortgage at the time defendants executed the note.[67]

The mere inclusion of the "would be" language does not, as Wachovia would have it, automatically transform defendants' argument into one of promissory fraud.

---

[65] *Id.* at 11.

[66] Doc. no. 47, at 6-7.

[67] *Id.* at 9.

That statement, although it implies a future state of being, could just as logically refer to the fact that the promissory note had not yet been signed at the time of the representation as it could refer to a future act of recording the mortgage.  More important than defendants' use of the words "would be" in their brief, however, is their statement that Baswell-Guthrie would never have signed the note had she known that Wachovia "had no intention of recording the mortgage."[68]  That argument *does* indicate that their defense (to the extent it is based on the failure to record the mortgage on the Florida property) is one of promissory fraud.  As Wachovia points out, there is no evidence in the record that, as of the time of the execution of the promissory note, Wachovia had no intention to record the mortgage.[69]

Defendants' arguments in their *brief* fail to establish a viable promissory fraud defense.  But, there *is* evidence in the *record* that supports their theory of fraudulent misrepresentation.  Wachovia represented to Baswell-Guthrie that the Florida property was only subject to one mortgage, that it had equity in excess of $500,000, and that its appraised value exceeded $1.4 million.[70]  Additionally, they expected to receive $164,563.32 as part of the transaction.[71]  Those facts were instrumental in securing

---

[68] Doc. no. 46, at 11.

[69] Doc. no. 47, at 9.

[70] Affidavit of Cheryl Baswell-Guthrie, at 3.

[71] *Id.* at 2.

20

defendants' agreement to sign the promissory note.[72]  In reality, however, there were multiple mortgages on the property, it had no equity, and its appraised value was merely $776,000.[73]  Those facts establish the first three elements of fraud; Wachovia made a false representation about material facts, and defendants relied on that false representation.  The final element is damages, and that is clearly met here; defendants face an obligation to pay nearly $200,000 on the note.  Thus, viewing the facts in the light most favorable to defendants, all the elements of a fraudulent misrepresentation defense are satisfied, and summary judgment is not appropriate.

## IV.  ORDER

For the reasons stated herein, plaintiff's motion for summary judgment is DENIED.  This case will be set for pretrial conference and trial by separate order.

DONE and ORDERED this 5th day of March, 2012.

United States District Judge

---

[72] *Id.* at 3.

[73] *Id.  See also* Affidavit of Nick B. Kanelidis, at 2-3.

21